IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
WICHITA FALLS DIVISION

| | |
|---|---|
| RYAN WAYNE BROWN, § | |
| § | |
| Plaintiff, § | |
| § | |
| v. § | Civil Action No. 7:17-cv-00151-M-BP |
| § | |
| SOUTHWEST CORRECTIONAL § | |
| MEDICAL GROUP, § | |
| § | |
| Defendant. § | |

**FINDINGS, CONCLUSIONS, AND RECOMMENDATION**
**OF THE UNITED STATES MAGISTRATE JUDGE**

Before the Court are Defendant's Motion for Summary Judgment and Brief in Support, filed April 26, 2019, ECF Nos. 50 and 51, and Plaintiff's Response, ECF No. 58, filed June 7, 2019. Based upon a full review of the pleadings on file and applicable legal authorities, the undersigned **RECOMMENDS** that Chief United States District Judge Barbara M. G. Lynn **GRANT** Defendant's Motion for Summary Judgment, ECF No. 50.

**I.    BACKGROUND**

Plaintiff Ryan Wayne Brown ("Brown"), an inmate formerly confined in the Wichita County Jail, filed his Original Complaint on October 24, 2017, generally alleging that he was refused medical assistance, was discriminated against because he could not afford care, and was seeking $10,000 from Southwest Correctional Medical Group ("SCMG"). On October 30, 2017, he filed another complaint, ECF No. 10, which the Court construes as an amended complaint. In that pleading, he alleges that his left hand was injured in a fight with a fellow inmate, and SCMG's nurses failed to provide medical and treatment to him despite his repeated requests. He claims that they ignored his serious medical needs and were negligent and guilty of medical malpractice. He sought $25,000 in damages. Brown also attached to his amended complaint handwritten statements

from several of his fellow inmates supporting his claims. To assist the Court in gaining further information regarding his claims, the Court issued a questionnaire to Brown. ECF No. 7. Brown responded to that questionnaire on November 20, 2017. ECF No. 8. Although Brown does not allege that SCMG is liable under any particular statute, the Court liberally construes his claim as a suit for conscious indifference to serious medical needs under 42 U.S.C. § 1983 and a claim of medical malpractice under Texas law.

SCMG filed the instant Motion for Summary Judgment, asserting that there was no genuine issue of material fact, and it was entitled to judgment as a matter of law, on Brown's claims of deliberate indifference and medical negligence. In support of its Motion, SCMG attached the affidavits of Kindra Perry, RN, a nurse employed by SCMG who works at the Wichita County Jail, and Lisa Patterson, the records custodian for the Wichita County Sheriff's Office. The affidavit of Nurse Perry ("Perry Affidavit") includes 105 pages of records, identified as SCMG 000001-000105, reflecting the care and treatment that Brown received from SCMG employees at issue in this case.  The affidavit of Ms. Patterson ("Patterson Affidavit") includes fifty-eight pages of records, identified as SCMG 000106-163, containing Brown's grievance records for the matters at issue in this case. Both affidavits properly prove the documents attached are business records under Rule 803(6) of the Federal Rules of Evidence. Brown's Response to SCMG's Motion, ECF 58 and 58-1, includes the first two pages of the Patterson Affidavit; documents marked SCMG 000105, 000081, 000149, 000133-136, 000121 (with additional notations), and 000139; Brown's initial Complaint, ECF No. 1; his response to the Court's questionnaire, ECF No. 8; his Amended Complaint, ECF No. 10; and the Settlement Status Report, ECF No. 39.

The summary judgment evidence reflects that Brown complained on October 12, 2017 of injury to his left hand due to a fight with a fellow inmate. Perry Affidavit at 2, ¶ 5. Concerned that

his hand might be broken, SCMG nurse Lakendra Taylor, LVN requested an order for an x-ray from ARNP Rebecca Hamilton. *Id.*, ¶ 6. Both of Brown's hands were x-rayed on October 12, 2017, and radiologist David Nguyen, D.O., concluded that neither hand showed an acute fracture. *Id.*, ¶ 7. Nurse Taylor gave Brown 800 mg of ibuprofen, a pain reliever. *Id.*, ¶ 8. Brown was removed from the general population of the jail on October 12 and returned to it on October 13. *Id.*, ¶ 9. Brown submitted no sick call requests from October 13 to 22, 2017. *Id.*, ¶ 10.

Brown submitted a sick call request form on October 22, complaining of pain and discomfort in his left hand. *Id.*, ¶ 13. Lajuana Givens, LVN, set an appointment for Brown, but he refused the appointment. *Id.* On October 25, Kelly Echols, LVN, examined Brown for a complaint of left-hand pain. *Id.*, ¶ 14. Brown said that his hand hurt, and he could not make a fist. *Id.* Nurse Echols observed that his left hand was mildly swollen. *Id.* Nurse Echols offered Brown ibuprofen, but he refused because of the cost. *Id.* He did not agree to take any medication until he saw a doctor. *Id.* An appointment with the doctor was scheduled for October 26. *Id.*, ¶ 15. On October 26, Brandon Ohman, M.D., saw Brown and ordered "ice protocol tid x 3 days" beginning October 27 and ending October 29. *Id.*, ¶ 16. The "ice protocol" called for ice packs to be applied to the affected area three times per day for three days. *Id.*

According to the medical records, Brown received ice packs during the afternoon shift on October 27, three shifts on October 28, and the morning shift on October 29. *Id.*, ¶ 17. He did not receive ice for any other shift on October 29 because he was taken to the hospital. *Id.* On October 29, Brown complained that his hand was not functional and was very painful. *Id.*, ¶ 20. A jail guard took Brown to the nurse's station, and Lashell Deshong, LVN assessed his hand and noted capillary refill of +6, the hand was cold to the touch, and it was tinged purple. *Id.* Brachia and

3

radial pulses were bounding. *Id.* Nurse Deshong reported her findings to NP Hamilton, and Brown was transported to United Regional Health Care System emergency department. *Id.*, ¶ 21.

At the hospital, Ramasamy Selvaraj, M.D., examined and evaluated Brown in the emergency department. *Id.*, ¶ 21. Brown's skin was noted as warm and dry to the touch, and his "musculoskeletal evaluation showed not gross abnormalities but bruising and swelling to the fourth and fifth left metacarpal joints." *Id.* Dr. Selvaraj suspected that Brown had a boxer fracture of the fifth metacarpal joint, but x-rays showed "no fracture, dislocation, soft tissue or joint abnormalities." *Id.*, ¶ 22. Brown was discharged from the emergency department, cleared to resume normal activities, and released to "return to work 29-Oct-2017." *Id.*, ¶ 24. Brown also was given a splint for his left hand and prescriptions for "ibuprofen 600 mg, 1 table by mouth every 6 hours, quantify 40, no refills, and Tylenol #3, 1 tablet by mouth every 6 hours, quantity 30, no refills." *Id.* On November 10, 2017, Brown was seen by Dr. Ohman, who noted that he had decreased inflammation in his left hand and normal capillary refill. *Id.*, ¶ 24. Dr. Ohman wrote a prescription for 800 mg of ibuprofen three times a day for seven days and planned a follow-up in one to two weeks. *Id.*, ¶ 25.

The summary judgment evidence reflects that Brown filed several grievances with Wichita County Jail officials in connection with the care he received for his injured left hand. He filed a grievance on October 15, 2017, # AI2994 #3, for lack of medical care, which was determined to be unfounded. ECF No. 51 at 140 and 143. On October 25, 2017, he filed another grievance for lack of care, AI2994 #6, which likewise was determined to be unfounded. *Id.* at 149 and 154. Brown filed another grievance relating to seeing a doctor on October 25, 2019, AI2994 #7, and this grievance was determined to be unfounded. *Id.* at 157 and 161. He complained of failing to get an ice pack and a sling in a grievance made on October 27, 2017, AI2994 #9, which grievance

was determined to be founded on October 31, 2017 because the medical records reflected that Brown received only one ice pack and not two and did not get the sling that was ordered. *Id.* at 164 and 169. Brown was offered an extra twenty minutes of recreation due to his grievance being determined to be founded. *Id.* at 170. Finally, the evidence reflects Brown filed a grievance on October 30, 2017, AI2994 # 10, for failing to give pain medications ordered by the doctor. *Id.* at 187. The grievance was investigated and determined to be unfounded because the medical records reflected that pain medications were given in a timely manner according to doctors' orders. *Id.* at 189.

## II.   LEGAL STANDARDS

### A.  Summary Judgment Standard

Pursuant to Rule 56 of the Federal Rules of Civil Procedure, summary judgment is proper when the pleadings and evidence illustrate that no genuine issue exists as to any material fact and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56; *Slaughter v. Southern Talc Co.*, 949 F.2d 167, 170 (5th Cir. 1991). Disputes concerning material facts are genuine if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1429 (5th Cir. 1996) (en banc) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). An issue is "material" if it involves a fact that might affect the outcome of the suit under the governing law. *Anderson*, 477 U.S. at 248; *Burgos v. Southwestern Bell Telephone Co.*, 20 F.3d 633, 635 (5th Cir. 1994). "The movant bears the burden of identifying those portions of the record it believes demonstrate the absence of a genuine issue of material fact." *Triple Tee Golf, Inc. v. Nike, Inc.*, 485 F.3d 253, 261 (5th Cir. 2007) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-25 (1986)).

When a movant carries his initial burden, the burden then shifts to the nonmovant to show that the entry of summary judgment is inappropriate. *Celotex*, 477 U.S. at 322-24; *Duckett v. City of Cedar Park, Tex.*, 950 F.2d 272, 276 (5th Cir. 1992). Although the nonmovant may satisfy this burden by tendering depositions, affidavits, and other competent evidence, "conclusory allegations, speculation, and unsubstantiated assertions are inadequate to satisfy the nonmovant's burden," *Douglass*, 79 F.3d at 1429, as "the adverse party's response . . . must set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e). Merely colorable evidence or evidence not significantly probative, however, will not defeat a properly supported motion for summary judgment. *Anderson*, 477 U.S. at 249-50. Furthermore, a mere scintilla of evidence will not defeat a motion for summary judgment. *Anderson*, 477 U.S. at 252; *Davis v. Chevron U.S.A., Inc.*, 14 F.3d 1082, 1086 (5th Cir. 1994).

Summary judgment evidence is viewed in the light most favorable to the party opposing the motion. *Matsushita Elec. Indus. Co., Ltd., v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Rosado v. Deters*, 5 F.3d 119, 123 (5th Cir. 1993). In addition, factual controversies are resolved in favor of the nonmovant, but only when both parties have submitted evidence of contradictory facts, thus creating an actual controversy. *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc). In the absence of any proof, however, the Court does not assume that the nonmovant could or would prove the necessary facts. *Id.*

In making its determination on the motion, the Court looks at the full record including the pleadings, depositions, answers to interrogatories, admissions, and affidavits. Fed. R. Civ. P. 56(c); *Williams v. Adams*, 836 F.2d 958, 961 (5th Cir. 1988). However, "the [Court's] function is not [ ] to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Anderson*, 477 U.S. at 249. The movant's motion for summary judgment

will be granted only if he meets his burden and the nonmovant fails to make the requisite showing that a genuine issue exists as to any material fact. Fed. R. Civ. P. 56(e)(2).

### B. *Pro Se* Standard

"*Pro se* plaintiffs are held to a less stringent pleading standard than documents drafted by attorneys and are entitled to a liberal construction, allowing all reasonable inferences that can be drawn from their pleadings." *Morgan v. Fed. Exp. Corp.*, 114 F. Supp. 3d 434, 436 (S.D. Tex. 2015) (citing *Haines v. Kerner*, 404 U.S. 519, 521 (1972)). Nevertheless, *pro se* plaintiffs must "still comply with the rules of civil procedure and make arguments capable of withstanding summary judgment." *Ogbodiegwu v. Wackenhut Corr. Corp.*, 202 F.3d 265 (5th Cir. 1999) (citing *Grant v. Cellular*, 59 F.3d 523, 524 (5th Cir. 1995); *Haines*, 404 U.S. at 520). And "while courts liberally construe the pleadings of *pro se* litigants, courts are not obligated under Federal Rule of Civil Procedure 56 [ ] to search the record to find evidence supporting a party's opposition to a summary judgment motion." *Murray v. Int'l Bus. Machines Corp.*, No. 3:14-CV-1809-M-BF, 2015 WL 4635776, at *1 (N.D. Tex. Aug. 4, 2015) (citations omitted).

### III.   ANALYSIS

#### A. Unconstitutional denial of medical care

Brown's claims against SCMG are legally groundless to the extent that he asserts liability under 42 U.S.C. § 1983 because SCMG employed the nurses who allegedly failed to properly treat Brown. SCMG cannot be held liable for the actions or inactions of its employees. *See Monell v. Dept. of Soc. Servs. of New York*, 436 U.S. 658, 694 (1978) ("a local government may not be sued under [section 1983] for an injury inflicted solely by its employees or agents."). Additionally, "[a] supervisory official may be held liable under § 1983 only if (1) he affirmatively participates in the acts that cause the constitutional deprivation, or (2) he implements unconstitutional policies that

causally result in the constitutional injury." *Gates v. Texas Dept. of Protective & Reg'y Servs.*, 537 F.3d 404, 435 (5th Cir. 2008) (citing *Baker v. Putnal*, 75 F.3d 190, 199 (5th Cir. 1996)). Nowhere in his Amended Complaint or his answer to the Court's questionnaire does Brown assert that SCMG itself was consciously indifferent to his medical needs, nor does he assert any unconstitutional policy that allegedly caused his injuries. As a result, SCMG is entitled to judgment as a matter of law on his claims against it for deliberate indifference to his serious medical needs.

Even if Brown had alleged a viable cause of action against SCMG, the summary judgment evidence does not create a fact issue that SCMG's employees were deliberately and consciously indifferent to his serious medical needs. Such claims are controlled by the Eighth Amendment's deliberate indifference standard. For there to be a violation of Brown's constitutional rights to adequate medical care, he must show that jail officials acted with deliberate indifference to the point of causing the "unnecessary and wanton infliction of pain." *Estelle v. Gamble,* 429 U.S. 97 (1976).

To prove this, Brown must show that a state actor was subjectively aware of a substantial risk of serious harm to Brown and failed to take reasonable measures to avoid that risk. *See Hare v. City of Corinth,* 74 F.3d 633, 648 (5th Cir.1996) (citing *Farmer v. Brennan,* 511 U.S. 825, 847 (1994). Unless delay in the provision of medical care causes substantial harm, that delay does not rise to the level of a violation of the claimant's constitutional rights. *See Mendoza v. Lynaugh,* 989 F.2d 191, 195 (5th Cir. 1993). Likewise, an incorrect diagnosis, a claimant's disagreement with the treatment of medical providers, or the failure to provide additional treatment do not equate to indifference. *See Domino v. Texas Dept. of Criminal Justice,* 239 F.3d 752, 756 (5th Cir. 2001)*; Norton v. Dimazana*, 122 F.3d 286, 292 (5th Cir. 1997). To show unconstitutional indifference to serious medical needs, a plaintiff must show that the medical staff "refused to treat him, ignored

his complaints, intentionally treated him incorrectly, or engaged in any similar conduct that would clearly evince a wanton disregard for any serious medical needs." *Johnson v. Treen,* 759 F.2d 1236, 1238 (5th Cir. 1985).

The summary judgment evidence does not support Brown's claim of deliberate indifference. Instead, it proves that SCMG's nurses responded to his requests for care, evaluated his medical condition, and secured medical treatment for his injured left hand. Brown was seen by physicians, including an emergency department physician at the local hospital in Wichita Falls, and was x-rayed in the jail and at the hospital. Although Brown asserts that SCMG nurses did not see him promptly and ignored his complaints of severe pain, the summary judgment evidence does not support this claim. He received prescriptions for pain medication, ice packs, a splint, and a sling. Although he complained that he was not seen soon enough, by the right providers, and did not receive the care he wanted, the medical records bely any assertion that SCMG personnel did not attend to his complaints. "Medical records of sick calls, examinations, diagnoses, and medications may rebut an inmate's allegations of deliberate indifference." *Banuelos v. McFarland,* 41 F.3d 232, 235 (5th Cir. 1995) (citing *Mendoza v. Lynaugh,* 989 F.2d 191, 193–95 (5th Cir. 1993).

Deliberate indifference is "an extremely high standard to meet." *Domino,* 239 F.3d at 756. "[T]he decision whether to provide additional treatment 'is a classic example of a matter for medical judgment.'" *Id.* (quoting *Estelle,* 429 U.S. at 107). Brown's summary judgment evidence shows that he was dissatisfied with the care and treatment that he received from SCMG personnel, documented through numerous grievances filed with the Wichita County Jail. However, disagreement regarding the extent and timing of medical care is not sufficient to raise a fact issue regarding deliberate indifference to his medical needs. Brown's claims of conscious indifference

to serious medical needs are not supported by the summary judgment evidence that was properly proven as business records and is before the Court. Consequently, there is no issue for trial, and SCMG is entitled to summary judgment on Brown's claims of deliberate indifference to serious medical needs.

### B. Medical malpractice

Texas "health care liability claims are subject to strict pleading and proof requirements." *N. Am. Specialty Ins. Co. v. Royal Surplus Lines Ins. Co.*, 541 F.3d 552, 561 (5th Cir. 2008). In a medical liability case, the plaintiff "bears the burden of proving (1) the [health care provider's] duty to act according to an applicable standard of care; (2) a breach of that standard of care; (3) injury; and (4) causation." *Hannah v. United States*, 523 F.3d 597, 601 (5th Cir. 2008). A claimant must establish the applicable medical standard of care before the trier of fact can consider if the healthcare provider violated that standard. *Id.* "Unless the mode or form of treatment is a matter of common knowledge or is within the experience of the layman, expert testimony will be required" for the claimant to satisfy his burden. *Hood v. Phillips,* 554 S.W.2d 160, 165–66 (Tex. 1977).

Here, Brown has alleged that SCMG was negligent in the care that its employees provided to him at the Wichita County Jail. However, the standard of care applicable to the treatment of Brown's injured hand and whether SCMG's employees met that standard are not matters that are within the common understanding of laypeople. *See Hannah*, 523 F.3d at 601-01 (expert testimony required because treatment of sinus infection not matter of common knowledge or within general experience of layman). As a result, expert testimony is required to establish the applicable standard of care and the violation of that standard. Brown has not designated an expert witness and has not offered summary judgment evidence from an expert witness to support his claim of negligence

10

against SCMG. Unless a matter of common knowledge or general experience, the appropriate standard of care as well as its breach must be proven by a qualified expert. *Hannah*, 523 F.3d at 601-02; *Quijano v. United States*, 325 F.3d 564, 567 (5th Cir. 2003). Expert testimony must also establish that the breach of the standard of care was the proximate cause of the harm alleged. *Guile v. United States*, 422 F.3d 221, 225 (5th Cir. 2005). Brown did not designate an expert witness or offer summary judgment evidence from an expert witness to demonstrate that there is a fact issue for trial on his medical malpractice claims. Accordingly, SCMG is entitled to summary judgment on those claims.

## IV.   CONCLUSION

For the foregoing reasons, the undersigned **RECOMMENDS** that Chief Judge Lynn **GRANT** Defendant's Motion for Summary Judgment, ECF No. 50, and **DISMISS with prejudice** all of Plaintiff's claims against Defendant.

A copy of this Findings, Conclusions, and Recommendation shall be served on all parties in the manner provided by law. Any party who objects to any part of this Findings, Conclusions, and Recommendation must file specific written objections within fourteen days after being served with a copy. *See* 28 U.S.C. § 636(b)(1)(B); Fed. R. Civ. P. 72(b)(1). In order to be specific, an objection must identify the specific finding or recommendation to which the objection is made, state the basis for the objection, and specify the place in the magistrate judge's Findings, Conclusions, and Recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific. Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error. *See Douglass v. United Services Auto. Ass'n*, 79 F.3d

1415, 1417 (5th Cir. 1996) (en banc).

      Signed February 4, 2020.

                                                                           _____
                                                                           Hal R. Ray, Jr.
                                                                           UNITED STATES MAGISTRATE JUDGE